[No. B150210. Second Dist., Div. Five. Oct. 3, 2002.]

KISHA SHEPHARD, Plaintiff and Appellant, v.
LOYOLA MARYMOUNT UNIVERSITY et al., Defendants and
Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of parts III.C.-F.

**COUNSEL**

Haney, Buchanan & Patterson, Steven H. Haney, Colleen A. Déziel and Bruce T. McIntosh for Plaintiff and Appellant.

Burke, Williams & Sorensen, Harold A. Bridges and H. Esther Kim for Defendants and Respondents.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, Kisha Shephard, appeals from a summary judgment entered in favor of defendants, Loyola Marymount University (the school) and Julie Wilhoit, on a complaint for race discrimination and breach of oral contract. The lawsuit arose out of the school's refusal to renew plaintiff's athletic

scholarship and her removal from the women's basketball team. Defendants' summary judgment motion was brought and granted on grounds: plaintiff's cause of action for race discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12900 et seq.) was barred as a matter of law because she was a student athlete and not a school employee; Ms. Wilhoit was not liable for damages because there is no individual liability under the FEHA; plaintiff's contract claim was barred by the statute of frauds; and plaintiff failed to exhaust her administrative remedies. Plaintiff opposed the summary judgment motion on its merits but also requested a continuance because of ongoing discovery proceedings. In addition, plaintiff requested leave to amend her complaint to assert fraud and negligent misrepresentation claims. The trial court denied the continuance and leave to amend requests but granted the summary judgment motion. In the published portion of this opinion, we address the question of whether plaintiff was an employee for purposes of the FEHA. We conclude plaintiff was not a school employee, she was a student who could not sue under the FEHA. Our decision is based solely on California statutory law. No constitutional question has been raised. No issue of federal law has been presented by plaintiff that controls the resolution of her FEHA claim. No issue has been raised as to the application of the antidiscrimination provisions of title IX, 42 United States Code section 2000d. We affirm.

## II. Background

On April 21, 2000, plaintiff filed her complaint against defendants alleging causes of action for race discrimination (first) and breach of oral contract (second). The complaint alleged that Ms. Wilhoit, who is Caucasian, was the school's head women's basketball coach. Plaintiff, who is an African-American, was an All-American basketball star at Crenshaw High School in Los Angeles. She was highly recruited by numerous division I colleges. Plaintiff decided to attend the school based on promises that she would receive a four-year scholarship.

The complaint alleged that, while plaintiff was attending the school, Ms. Wilhoit engaged in a pattern and practice of creating and maintaining a racially discriminatory and hostile environment. Ms. Wilhoit frequently made racial remarks to plaintiff. The racial remarks included statements that plaintiff had a "ghetto mentality" and she "should run away" when police officers entered the gym during a practice. In May 1999, an unsigned letter from an anonymous concerned alumni sent to the school described some of the racial discrimination by Ms. Wilhoit directed at plaintiff and other players. Within days of the receipt of this letter, Ms. Wilhoit removed

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

plaintiff from the team. Furthermore, it was alleged Ms. Wilhoit ordered the school to revoke plaintiff's scholarship. Plaintiff alleged that the discriminatory action violated the FEHA, which prohibits employers or their agents from discriminating against their employees on the basis of race. It was alleged that: plaintiff's scholarship was revoked because of her race; the school condoned and ratified Ms. Wilhoit's actions; plaintiff lost substantial benefits valued at a minimum of $26,000 a year; and she lost medical benefits and future lost earnings. In the second cause of action, plaintiff alleged that in 1997 she and the school entered into an oral contract for her scholarship to be automatically renewed for four years. The terms of the contract were partially set forth in a written document.

Defendants answered the complaint and moved for summary judgment. In the summary judgment motion, which was filed January 25, 2001, defendants argued summary judgment was required because plaintiff was not entitled to damages under the FEHA because she was not a school employee.

### III. Discussion

#### A. *Standard of Review of an Order Granting Summary Judgment on the Merits*

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851 [107 Cal.Rptr.2d 841, 24 P.3d 493], the Supreme Court described the burden of production on summary judgment motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted.)

We review the trial court's decision to grant the summary judgment de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66, 67-68

[99 Cal.Rptr.2d 316, 5 P.3d 874]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another point in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 853, fn. 19.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling not its rationale. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; *Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

B. *Plaintiff Was Not an Employee for FEHA Purposes*

■ Plaintiff contends the trial court erroneously found her FEHA claim was without merit because triable issues of material fact existed as to whether she was a school employee. The FEHA prohibits employment discrimination on certain enumerated classifications, one of which is on the basis of race. (§§ 12920, 12926, 12940.) The FEHA provides limited definitions of the terms "employee" and "employer." (§ 12926, subds. (c) & (d).) Section 12926, subdivision (c) states, " 'Employee' does not include any individual employed by his or her parents, spouse or child, or any individual employed under a special license in a nonprofit sheltered workshop or rehabilitation facility." As can be noted, section 12926, subdivision (c) only provides a description of what is *not* an employee. Employer is defined as follows: " 'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political civil subdivision of the state, and cities, except as follows: [¶] 'Employer' does not include a religious association or corporation not organized for private profit." (§ 12926, subd. (d).) The first paragraph of section 12926, subdivision (d) does provide some definition of an employer. But the second paragraph of section 12926, subdivision (d) provides a description of what is *not* an employer. Beyond these limited definitions, the FEHA does not define an employer, employee, or what constitutes employment. In order to recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee. No decisional authority has addressed the specific issue of whether a student athlete who receives an athletic scholarship is a school employee under the FEHA.

However, persuasive decisional authority in the workers' compensation and public entity liability contexts provides guidance as to the meaning of the term "employee." Labor Code section 3352, subdivision (k) excludes a student athlete receiving an athletic scholarship from the term "employee." What is now Labor Code section 3352, subdivision (k), resulted from the Court of Appeal decision in *Van Horn v. Industrial Acc. Com.* (1963) 219

Cal.App.2d 457, 464-467 [33 Cal.Rptr. 169] (*Van Horn*), a workers' compensation case. In *Van Horn,* a student athlete received financial assistance from California Polytechnic State University, San Luis Obispo, in exchange for playing football. Some of the money paid to the student was in the form of an athletic scholarship, which was funded by a booster club. The student was killed in an airplane crash while returning from an out-of-state football game against Bowling Green University. The student's heirs applied for workers' compensation death benefits on the theory that the decedent was an employee of Cal Poly San Luis Obispo. (*Id.* at pp. 460-463.) The Court of Appeal held that the student had an employment contract with the college and that his heirs were entitled to workers' compensation benefits. (*Id.* at pp. 464-468.) The decision was premised on the theory the student's agreement to play football for Cal Poly San Luis Obispo was a contract to "render services" within the meaning of workers' compensation law. (*Id.* at pp. 465-466.) However, *Van Horn* also stated: "It cannot be said as a matter of law that every student who receives an 'athletic scholarship' and plays on the school athletic team is an employee of the school. To so hold would be to thrust upon every student who so participates an employee status to which he has never consented and which would deprive him of the valuable right to sue for damages. Only where the evidence establishes a contract of employment is such inference reasonably to be drawn. [Citation.]" (*Id.* at p. 467.)

In 1965, in response to *Van Horn,* the Legislature amended Labor Code section 3352 to add former subdivision (j) to exclude athletic participants as employees. As originally adopted, the exclusion of scholarship athletes from the definition of the term "employee" was as follows, in former Labor Code section 3352, subdivision (j): ' "Employee' excludes: [¶] . . . [¶] (j) Any person, other than a regular employee, participating in sports or athletics who receives no compensation for such participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodgings or other expenses incidental thereto." (Stats. 1965, ch. 1791, § 1, pp. 4127-4128; see *Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997, 1002, 1005-1006 [229 Cal.Rptr. 494] [detailing legislative amendments to Lab. Code, § 3352 since the *Van Horn* decision to "clarify the exclusion of athletic participants" as employees] (*Graczyk*).) The purpose of the 1965 amendment was described as follows: "[The] amendment evidenced an intent on the part of the Legislature to prevent the student-athlete from being considered an employee of an educational institution for any purpose which could result in financial liability on the part of the university." (*Townsend v. State of California* (1987) 191 Cal.App.3d 1530, 1537 [237 Cal.Rptr. 146] (*Townsend*); *Graczyk, supra,* 184 Cal.App.3d at pp. 1002, 1005-1006.) Labor Code section 3352, subdivision (j), the original student athlete exclusion from the scope of the term "employee," was later recodified and is now

found in subdivision (k). Labor Code section 3352, subdivision (k) now states in pertinent part: " 'Employee' excludes . . . : [¶] . . . [¶] (k) Any student participating as an athlete in amateur sporting events sponsored by any public agency, public or private nonprofit college, university or school, who receives no remuneration for the participation other than the use of athletic equipment, uniforms, transportation, travel, meals, lodgings, scholarships, grants-in-aid, or other expenses incidental thereto."

In *Townsend, supra,* 191 Cal.App.3d at pages 1534-1537, the Court of Appeal extended the *Graczyk* analysis from the workers' compensation context to a claim under the Tort Claims Act. (§ 810 et seq.) The facts in *Townsend* were as follows: "In a varsity basketball game between the University of California at Los Angeles (UCLA) and San Jose State University (San Jose State), a player for San Jose State, Ronald Lowe, [viciously] struck a UCLA player, Raymond Townsend, with his fists and inflicted physical injury. In a personal injury action filed by Townsend against Lowe and various other defendants, a jury awarded Townsend $25,000 as against Lowe. [¶] Before the matter was submitted to the jury, however, the trial court determined as a matter of law that defendant Lowe was not an employee of the State of California (State) and thus Townsend could not recover under the doctrine of respondeat superior against the other named defendants, i.e., the State, the athletic director and the coach at San Jose State." (*Townsend, supra,* 191 Cal.App.3d at p. 1532.) *Townsend* concluded that liability could not be imposed against the state because as a matter of law Mr. Lowe, the student athlete who struck the plaintiff, was not an "employee" of San Jose State University. (*Id.* at pp. 1534-1537.) In so holding, *Townsend* relied on the Legislature's clear intent in amending Labor Code section 3352 following *Van Horn* to exclude a student athlete from the definition of an employee. (*Townsend, supra,* 191 Cal.App.3d at pp. 1535-1537.) *Townsend* concluded that the determination of whether a student is an employee does not rest upon whether a student athlete is on scholarship and attending a private or public institution. (*Id.* at pp. 1534, 1537.) *Townsend* stated: "It is a matter of common knowledge that colleges and universities in California, in varying degrees, maintain athletic programs which include a number of sports, such as golf, tennis, swimming, track, baseball, gymnastics and wrestling. It is also well known that of all the various sports programs, at least in California, only two, i.e., basketball and football, generate significant revenue. These revenues in turn support the other non-revenue producing programs. [¶] Thus, conceptually, the colleges and universities maintaining these athletic programs are not in the 'business' of playing football or basketball any more than they are in the 'business' of golf, tennis, or swimming. Football and basketball are simply part of an integrated multisport program which is part of the education process.

Whether on scholarship or not, the athlete is not 'hired' by the school to participate in interscholastic competition. [Citation.] [Fn. omitted.]" (*Id.* at p. 1536; see *Munoz v. City of Palmdale* (1999) 75 Cal.App.4th 367, 371-372 [89 Cal.Rptr.2d 229].) No reason exists to distinguish the reasoning of *Graczyk* and *Townsend* from the facts of this case.

Furthermore, the National Collegiate Athletic Association (NCAA) constitution and bylaws were explicitly incorporated by reference into the financial aid agreements executed by plaintiff. These rules clearly provide that plaintiff was not a school employee. Article 2.9 of the NCAA Constitution provides, "Student-athletes shall be amateurs in intercollegiate sport, and their participation should be motivated by education and by the physical, mental and social benefits to be derived. Student participation in intercollegiate athletics is an avocation . . . ." NCAA Bylaws, article 12.01.1 provides, "Only an amateur student-athlete is eligible for intercollegiate athletics participation in a particular sport." NCAA Bylaws, article 12.01.4 provides, "A grant-in-aid administered by an educational institution is not considered to be pay or the promise to pay for athletic skill, provided it does not exceed the financial aid limitations set the Association's membership." NCAA Bylaws, article 12.02.2 defines "pay" as follows: "Pay is the receipt of funds, awards or benefits not permitted by the governing legislation of the Association for participation in athletics." NCAA Bylaws, article 15.02.4.1 defines "scholarships" and "grants" as financial aid. NCAA Bylaws, article 12.02.3 defines a professional athlete as follows: "A professional athlete is one who receives any kind of payment, directly or indirectly for athletics participation except as permitted by the governing legislation of the Association." Under these standards, plaintiff's argument that she received compensation would have rendered her ineligible to play. Moreover, plaintiff signed the financial aid agreements, which specifically characterized the aid and scholarships as neither pay nor a promise to pay.

Although not dispositive, as defendants point out, both federal and California income tax statutes specifically exclude "qualified scholarships" from gross income. (26 U.S.C. § 117(a) ["Gross income does not include any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization"]; Rev. & Tax. Code, § 17131 ["Part III of Subchapter B of Chapter 1 of Subtitle A of the Internal Revenue Code, relating to items that are specifically excluded from gross income, shall apply, except as otherwise provided." (Fn. omitted.)].)

Finally, the application of traditional statutory construction principles warrants the conclusion that a student athlete is not a school employee. Statutes relating to the same subject matter must be harmonized insofar

as is possible. (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613]; *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].) Further, the Supreme Court has held, " ' "[W]hen words used in a statute have acquired a settled meaning through judicial interpretation, the words should be given the same meaning when used in another statute dealing with analogous subject matter; this is particularly true, where . . . both statutes were enacted for the welfare of employees and are in harmony with each other." [Citation.]' [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1005 [111 Cal.Rptr.2d 564, 30 P.3d 57], citing *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 496, fn. 16 [66 Cal.Rptr.2d 304, 940 P.2d 891, 91 A.L.R.5th 677].) ■ These rules of statutory interpretation construing different statues in pari materia are regularly applied in contexts analogous to the present one. (*Oscar Mayer & Co. v. Evans* (1979) 441 U.S. 750, 756 [99 S.Ct. 2066, 2071, 60 L.Ed.2d 609] ["Since the [(Age Discrimination in Employment Act of 1967)] ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace, since the language of § 14 (b) is almost *in haec verba with* § 706 (c), and since the legislative history of § 14 (b) indicates that its source was § 706 (c), we may properly conclude that Congress intended that the construction of § 14 (b) should follow that of § 706 (c)."]; *American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1129-1130 [51 Cal.Rptr.2d 251, 912 P.2d 1198] [statutes granting a right in other transportation contexts pertinent to whether an airline can pursue a private right of action under the Airport and Airway Improvement Act of 1982].) Labor Code section 3352, subdivision (k) defines the term "employee" in the context of defining benefits available to injured workers. Common sense suggests these statutes, Labor Code section 3352, subdivision (k) and the FEHA, both of which are designed to provide workplace protections for employees, should be construed together in a harmonious fashion.

■ One additional thought is relevant to terms of statutory construction issues. Statutes are to be construed so as to avoid absurd or unreasonable results. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539]; *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) ■ To adopt plaintiff's construction of the FEHA, one that specifically eschews the application of Labor Code section 3352, subdivision (k), would lead to an absurd or unreasonable result. Under plaintiff's construction, a student athlete would be an employee for purposes of the FEHA. But a student athlete would not be an employee for purposes of workers' compensation benefits or government tort liability.

Plaintiff has pointed to no legislative history materials nor any valid public policy which would support such an unreasonably divergent construction of California law.

C.-F.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV.   DISPOSITION

The summary judgment is affirmed. Defendants, Loyola Marymount University and Julie Wilhoit, are entitled to their costs on appeal from plaintiff, Kisha Shephard.

Grignon, J., and Armstrong, J., concurred.

---

*See footnote, *ante*, page 837.