**Lamar DAWSON, Plaintiff,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al., Defendants.**

Case No. 16–cv–05487–RS

United States District Court,
N.D. California.

Signed 04/25/2017

Betsy Carol Manifold, Brittany Nicole DeJong, Marisa C. Livesay, Rachele R. Rickert, Wolf Haldenstein Adler Freeman and Herz LLP, San Diego, CA, Jeffrey G. Smith, Mark Carl Rifkin, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Jerry K. Cimmet, Jerry K. Cimmet, Attorney at Law, San Mateo, CA, John M. Kelson, Law Office of John M. Kelson, Oakland, CA, for Plaintiff.

Kenneth Dawson Sulzer, Sarah Kroll-Rosenbaum, Steven Bernard Katz, Constangy, Brooks, Smith & Prophete, LLP, Los Angeles, CA, Diana Tabacopoulos, Jeffrey Arn Berman, Kiran Aftab Seldon, Seyfarth Shaw LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS

RICHARD SEEBORG, United States District Judge

### I. INTRODUCTION

Plaintiff Lamar Dawson, a former college football player for the University of

Southern California ("USC"), brings this putative class action lawsuit against the National Collegiate Athletic Association ("NCAA") and the PAC–12 Conference ("PAC–12") for violations of the Fair Labor Standards Act ("FLSA") and the California Labor Code. Defendants move to dismiss on the grounds that student athletes are not covered under either statute and Dawson lacks standing to sue. Defendants rely heavily on the Seventh Circuit's opinion in *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285 (7th Cir. 2016), which held, as a matter of law, that former student athletes of NCAA Division I schools are not "employees" under the FLSA. While the *Berger* decision, as out of circuit authority, is not binding and the parties dispute its applicability, its reasoning is persuasive and defendants' motion will be granted.

## II. BACKGROUND [1]

From 2011 to 2015, Dawson played football for the University of Southern California, a Division I Football Bowl Subdivision (FBS) member of the PAC–12. He alleges that, in that capacity, he was denied full pay for all hours worked, including overtime pay, and was frequently permitted to work without receiving required minimum wage payments. He further alleges that the rules governing student athletes who play football for the NCAA and PAC–12 member schools are set in the first instance by the NCAA, and then adopted by

PAC–12. On this basis, he claims that NCAA and PAC–12 are joint employers of student athletes who play Division I FBS football on behalf of member schools. He brings claims against the NCAA and PAC–12 for violations of the FLSA · and the California Labor Code, as well as derivative claims under California's Private Attorneys General Act ("PAGA") and Unfair Competition Law ("UCL"). He brings suit on behalf of a "FLSA Class," which appears to include any Division I FBS football player in the United States, and a "California Class," which appears to include student athletes in football programs at NCAA member schools in California, as well as several California sub-classes based on specific Labor Code violations.[2]

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the mis-

---

1. This background is based on the allegations in the complaint, which must be taken as true for purposes of a motion to dismiss. The exhibits attached to defendants' reply brief do not affect the analysis and outcome of this order and thus are not considered.

2. The "FLSA Class" is defined as: "All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendant NCAA to the substantial economic

benefit of said Defendant in any Division I FBS football team in the United States within the applicable statutory periods." Comp. ¶ 26. The "California Class" is defined as: "All persons who are, or have been, regulated and/or controlled directly or indirectly in their employment, and the compensation therefor, as student athletes in a football program by the Defendants NCAA and PAC–12 to the substantial economic benefit of said Defendants in the State of California within the applicable statutory periods." *Id.* ¶ 27.

conduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

### A. Article III Standing

 To start, defendants argue that Dawson lacks standing to sue. Dawson has the burden of establishing that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Under the FLSA, alleged employees' "injuries are only traceable to, and redressable by, those who employed them." *Berger*, 843 F.3d at 289 (citing *Roman v. Guapos III, Inc.*, 970 F.Supp.2d 407, 412 (D. Md. 2013)). Accordingly, in cases like this one, courts have reasoned that "the question of a plaintiff's standing turns on whether she has sufficiently alleged that she was 'employed' by defendants, as that concept is interpreted in the context of the FLSA." *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F.Supp.2d 139, 146 (D. Mass. 2013); *see also Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F.Supp.3d 640, 644 (D.S.C. 2016) ("[T]he Court must conduct an employer analysis to determine whether Plaintiffs may trace their injuries to each Defendant."); *Sandoval v. Ali*, 34 F.Supp.3d 1031, 1039 (N.D. Cal. 2014) (same). At the hearing, the parties agreed that the standing inquiry converges with the substantive FLSA employer inquiry.

In *Berger*, however, the Seventh Circuit treated the inquiries as distinct. It held student athletes had standing to sue their university despite ultimately concluding the students were not "employees" under FLSA. Irrespective of the FLSA employer analysis, the court found plaintiffs plausibly alleged injury traceable to the university, but not the NCAA because joint employment was not mentioned in the complaint. *See id.*, 843 F.3d at 289. Here, in contrast, Dawson has alleged NCAA and PAC–12 are joint employers of the student athletes. *See* Comp. ¶¶ 48–50.

As a general matter, it is uncontested that liability in the FLSA context is predicated on the existence of an employer-employee relationship. It seems to follow,

thus, that Dawson's injuries are only traceable to, and redressable by, those defendants who are deemed by law to have employed him—an inquiry which is addressed in the next section. In light of the uncertainty introduced by *Berger*, however, discussion of the merits of defendants' motion to dismiss is warranted.

## B. FLSA

 Defendants argue that Dawson is not their "employee" under the FLSA. The FLSA defines "employee" as "any individual employed by an employer" and "employ" as including "to suffer or permit to work." 29 U.S.C. §§ 203(g), (e). While the Supreme Court has instructed courts to construe the terms "employee" and "employer" expansively, it has also held that the definition of "employee" "does have its limits." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). As a general rule, whether there is an employment relationship under the FLSA is tested by " 'economic reality' rather than 'technical concepts.' " *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). To guide this inquiry, courts have developed a variety of multifactor tests. The Ninth Circuit has a four-factor test, which asks "whether the employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). That test, however, is not "etched in stone and will not be blindly applied." *Id.* at 1470. The "ultimate determination" of employer status must be based upon "the circumstances of the whole activity." *Id.*

The Ninth Circuit has made clear that multifactor tests are not always a useful framework for assessing the circumstances of an alleged employment relationship. *See Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993). As explained in *Hale*:

> The *Bonnette* factors, with their emphasis on control over the terms and structure of the employment relationship, are particularly appropriate where (as in *Bonnette* itself) it is clear that some entity is an "employer" and the question is which one. The dispute in this case is a more fundamental one: Can these [plaintiffs] plausibly be said to be "employed" in the relevant sense at all?

*Id.* (citing *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992)). Here, while it is not clear that either the NCAA or PAC-12 is an "employer," a separate question arises as to whether student athletes can be considered "employees." In that sense, the *Bonnette* test does not provide the whole answer. Instead, the focus is on the "true nature of the relationship." *Hale*, 993 F.2d at 1387; *see also Berger*, 843 F.3d at 291 (declining to apply a multifactor test to determine the employee status of student athletes because the factors failed to capture the nature of the relationship between the athletes and their schools).

On this question, the Seventh Circuit decided that the "the long tradition of amateurism in college sports, by definition, shows that student athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation." *Berger*, 843 F.3d at 293. It reasoned that student participation in college athletics is "entirely voluntary" and, although "student athletes spend a tremendous amount of time playing for their respective schools, they do so—and have done so for over a hundred years under the NCAA—without any real expectation of earning an income." *Id.* "Simply put," it concluded, "student-athletic 'play' is not 'work,' at least as the term is used in the FLSA." *Id.*

Dawson argues that *Berger* is distinguishable because it involved track and field athletes at the University of Pennsylvania, while this case involves Division I football players who earn "massive revenues" for their schools. Opp. at 8. Yet, Dawson offers no legal authority to support his conclusion. At most, he points to the concurrence in *Berger* and the decision of a regional director of the National Labor Relations Board (NLRB). In the *Berger* concurrence, Judge Hamilton did not consider, much less find, that football players are "employees" under FLSA. Rather, he stated, in passing, that he is "less confident" that *Berger*'s broad holding extends to students who receive athletic scholarships to participate in "so-called revenue sports." 843 F.3d at 294. His concurrence did not purport to represent an alternative line of legal analysis and the full circuit in any event denied rehearing *en banc*.

In *Northwestern University, Employer, and Collegiate Athletes Players Ass'n*, Case 13–RC–121359, 2014 WL 1246914 (March 26, 2014), an NLRB regional director found that Northwestern University football players receiving grant-in-aid scholarships are "employees" within the meaning of the National Labor Relations Act. That decision not only involves a different statute and different types of parties (defendants here are athletic organizations, not schools), but it was not adopted by the Board. The NLRB declined to assert jurisdiction over the case on request for review. It reasoned that "because of the nature of sports leagues ... and the composition and structure of FBS football ... it would not promote stability in labor relations to assert jurisdiction in this case." *Northwestern Univ. & College Athletes Players Ass'n*, 2015 WL 4882656, 2015 NLRB LEXIS 613 (Aug. 17, 2015). Accordingly, the regional director's decision is not entitled to deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("we have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.' ")(citation omitted).[3]

In contrast, defendants' position is supported by the weight of the case law. As the Seventh Circuit noted in *Berger*, "[a] majority of courts have concluded—albeit in different contexts—that student athletes are not employees." 843 F.3d at 291 (citing cases).[4] Moreover, the Department of Labor has indicated that student athletes are not employees under the FLSA. Chapter Ten of its Field Operations Handbook (FOH) "contains interpretations regarding the employment relationship required for the [FLSA] to apply." FOH, § 10a00. Section 10b24(a) provides that "students who participate in activities generally recognized as extracurricular are generally not considered to be employees within the meaning of the [FLSA]." § 10b24(a). It references section 10b03(e), which explains that schools may permit or require students to engage in extracurricular activities like "interscholastic athletics," which

---

3. For the same reason, the memorandum recently issued by the outgoing General Counsel of the NLRB is not entitled to deference.

4. As *Berger* notes, two courts reached the opposite conclusion over fifty years ago, but they did so, in part, because the student athletes in those cases were also separately employed by their universities. *See id.*, 843 F.3d at 292 (citing *Univ. of Denver v. Nemeth*, 127 Colo. 385, 257 P.2d 423 (1953) and *Van Horn v. Indus. Accident Comm'n*, 219 Cal.App.2d 457, 33 Cal.Rptr. 169 (1963)). Moreover, as discussed below, the California legislature amended the state's labor code after *Van Horn*.

are "conducted primarily for the benefit of the participants as a part of the educational opportunities provided to the students by the school or institution, are not work of the kind contemplated by [the FLSA] and do not result in an employer-employee relationship between the student and the school." In contrast, section 10b24(b) discusses situations in which "an employment relationship will generally exist with regard to students." § 10b24(b). Under that subsection, students who participate in work-study programs are "generally considered employees under the [FLSA]." *Id.* These provisions are "entitled to respect," even if they are not authoritative. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

Dawson contends that Division I FBS football does not fit within the confines of section 10b24(a) because athletes play college football for the economic benefit of the NCAA. He claims revenue-generating sports are like work-study programs and fit with 10b24(b). Yet, section 10b03(e) refers broadly to "interscholastic athletics" in a list of activities that do not constitute "work." It does not distinguish between sports that generate revenue and those that do not. Also, there is a difference between work-study programs, which exist for the benefit of the school, and football programs, which exist for the benefit of students and, in some limited circumstances, also benefit the school.

Moreover, the premise that revenue generation is determinative of employment status is not supported by the case law. *See, e.g., Bonnette*, 704 F.2d at 1470 (declining to apply a different standard to "public social service agencies" than is applied to "profit-seeking employers"); *Valladares v. Insomniac, Inc.*, 2015 WL 12656267, at *10 (C.D. Cal. Jan. 29, 2015) (rejecting the argument that defendant could not invoke a specific FLSA exemption because its "revenue is in the millions

of dollars"). Indeed, in examining the "economic reality" of the relationship between student-trainees and their schools, courts have rejected the relevance of profitability. *See, e.g., Jochim v. Jean Madeline Educ. Ctr. of Cosmetology*, 98 F.Supp.3d 750, 759 (E.D. Pa. 2015) ("[Defendant's] alleged profit from its clinical program does not change our analysis under the FLSA."); *Ortega v. Denver Inst. L.L.C.*, No. 14-CV-01351-MEH, 2015 WL 4576976, at *12 (D. Colo. July 30, 2015) (same). California courts have reached a similar conclusion in related contexts. *See, e.g., Townsend v. State of California*, 191 Cal.App.3d 1530, 1532, 237 Cal.Rptr. 146 (1987) (rejecting the argument that "since intercollegiate athletics are 'big business' and generate large revenues for the institutions who field teams in such competition, the athletes who represent those institutions should be considered to be employees or agents of those institutions under the doctrine of respondeat superior").

At the hearing on this motion, counsel for plaintiff argued that the Ninth Circuit's decision in *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049 (9th Cir. 2015) is instructive here. He claimed that *O'Bannon* characterized the relationship between the NCAA and student athletes as "labor for in-kind compensation" which suffices to establish an employment relationship under FLSA. *Id.* at 1066. Yet, as plaintiff himself acknowledges, the scope of that decision is limited. *See* Opp. fn. 7. *O'Bannon* reaffirmed that NCAA compensation rules are subject to antitrust scrutiny. In so doing, the court considered whether those rules regulate any "commercial activity." It found they do, based on the broad modern legal understanding of "commerce" and the fact that the exchange being regulated—labor for in-kind compensation—"is a quintessentially commercial transaction." *Id.* The decision says nothing about the existence of an employ-

ment relationship between student athletes and the NCAA. To the contrary, the decision notes the Supreme Court's own description of the college football market as "a particular brand of football" that draws from "an academic tradition." *Id.* at 1074 (citing *NCAA v. Board of Regents of the University of Oklahoma*, 468 U.S. 85, 102, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984)). The Ninth Circuit reasoned that "not paying student-athletes is *precisely what makes them amateurs*," *id.* at 1076 (emphasis in original), and concluded that "the difference between offering student-athletes education-related compensation and offering them cash sums untethered to educational expenses is not minor; it is a quantum leap." *Id.* at 1078. Ultimately, plaintiff is looking for *O'Bannon* to carry a weight it cannot shoulder.

Leaving aside the policy question of whether and how Division I FBS college football players should be compensated, there is simply no legal basis for finding them to be "employees" under the FLSA.[5] The guidance from the Department of Labor weighs against such a finding, as do the decisions from courts that have considered the issue. Dawson's FLSA claim must therefore be dismissed.

## B. California Labor Code

 Defendants also argue that Dawson is not their "employee" under the California Labor Code. They rely on a line of cases holding that student athletes are not employees in the context of other California statutes, stemming largely from the California legislature's decision to amend Labor Code section 3352 to exclude student athletes from the term "employees" for purposes of worker's compensation.

The amendment to Section 3352(k) resulted from the decision in *Van Horn*, where a court of appeal held that a student athlete who received financial aid, partially in the form of an athletic scholarship, was an employee of his university for purposes of worker's compensation. In response to *Van Horn*, the California legislature amended Labor Code section 3352 to exclude athletic participants as employees. *See Graczyk v. Workers' Comp. Appeals Bd.*, 184 Cal.App.3d 997, 1002, 1005–1006, 229 Cal.Rptr. 494 (1986) (detailing legislative amendments to § 3352 since the *Van Horn* decision to "clarify the exclusion of athletic participants" as employees).

In *Townsend*, a court of appeal held that student athletes are not employees of their universities for purposes of the Tort Claims Act. It relied, in part, on the amendment to section 3352(k), which it viewed as evidencing "an intent on the part of the Legislature to prevent the student-athlete from being considered an employee of an educational institution for any purpose which could result in financial liability on the part of the university." 191 Cal.App.3d at 1537, 237 Cal.Rptr. 146. It also reasoned that colleges "are not in the 'business' of playing football or basketball any more than they are in the 'business' of golf, tennis or swimming. Football and basketball are simply units of an integrated multisport program which is part of the education process. Whether on scholarship or not, the athlete is not 'hired' by the school to participate in interscholastic competition." *Id.* at 1536, 237 Cal.Rptr. 146.

Later, in *Shephard v. Loyola Marymount Univ.*, 102 Cal.App.4th 837, 125 Cal. Rptr.2d 829 (2002), a court of appeal ex-

---

**5.** Moreover, any contrary conclusion would require ultimately the drawing of arbitrary lines—e.g., the classification of "revenue-generating" sports and the classification of players who qualify as "employees" (which, if scholarship-dependent, also includes the classification of the type of "scholarship" necessary to qualify as an "employee"). Such an unworkable arrangement presumably is not the intention of Congress.

tended this analysis to claims under the Fair Employment and Housing Act (FEHA). It characterized *Townsend* and *Graczyk* as persuasive decisional authority, and found no reason to distinguish their reasoning in the FEHA context. It further relied on the application of traditional statutory construction principles to reach the conclusion that a student athlete is not a school employee for purposes of FEHA. It explained that "statutes relating to the same subject matter must be harmonized insofar as is possible" and that "when words used in a statute have acquired a settled meaning through judicial interpretation, the words should be given the same meaning when used in another statute dealing with analogous subject matter; this is particularly true, where ... both statutes were enacted for the welfare of employees and are in harmony with each other." *Id.* at 846, 125 Cal.Rptr.2d 829. It concluded that Labor Code section 3352 (k) and FEHA, "both of which are designed to provide workplace protections for employees, should be construed together in a harmonious fashion." *Id.* The same logic applies here.

Dawson argues that these cases are inapposite because § 3352(k) is inapplicable in these circumstances. Invoking *expressio unius est exclusio alterius*, he contends that it would be a mistake to apply a limited and specific exclusion in section 3352(k) to provisions in other divisions of the Labor Code that were not provided for by the legislature. In so doing, he ignores the recent line of cases, like *Shephard* and *Townsend*, extending the policy underlying § 3352(k) to other contexts. Unable to distinguish *Shephard*, Dawson argues that "much has changed concerning the status of athletes since the time that *Shephard* was decided." Opp. at 23. Yet, the *Shephard* decision, issued in 2002, acknowledged that basketball and football "generate significant revenue." 102 Cal.App.4th at 844, 125 Cal.Rptr.2d 829 (citing *Town-*

*send*, 191 Cal.App.3d at 1536, 237 Cal. Rptr. 146). There is no reason to ignore or distinguish this line of cases. *See In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) ("[I]n the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts.") (internal citations omitted). In light of the relevant decisions of the California legislature and courts of appeal, Dawson's Labor Code claims are dismissed.

**C. Derivative Claims**

Dawson acknowledges that his claims under the UCL and PAGA are derivative of his FLSA and Labor Code claims. Accordingly, those claims must also be dismissed.

**V. CONCLUSION**

Defendants' motion to dismiss is granted. Because Dawson's complaint is based on an untenable legal theory, amendment would be futile. The complaint is thus dismissed without leave to amend. *See Serra v. Lappin*, 600 F.3d 1191, 1195 (9th Cir. 2010).

**IT IS SO ORDERED.**