Filed 8/7/14  Castaneda v. Ensign Group CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN CASTANEDA,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>THE ENSIGN GROUP, INC. et al.,<br><br>  Defendants and Respondents. | 2d Civil No. B249119<br>(Super. Ct. No. C110466)<br>(San Luis Obispo County) |

Plaintiff John Castaneda appealed a summary judgment in favor of defendants The Ensign Group, Inc. (Ensign) and Ensign Facility Services, Inc. (EFS) on his class action lawsuit seeking damages for nonpayment of minimum and overtime wages.  In his opening brief, Castaneda now seeks reversal of the summary judgment in favor of Ensign.  He no longer challenges the judgment in favor of EFS.  We conclude the trial court erred by granting summary judgment for Ensign.  There are triable issues of fact about whether Ensign was Castaneda's employer.  We reverse.

FACTS

Castaneda filed a class action complaint on behalf of himself and other certified nursing assistants against Ensign for "unpaid minimum and overtime wages." He alleged Ensign was the alter ego of the Cabrillo Rehabilitation and Care Center (Cabrillo), a nursing facility, where he worked, and its "corporate veil should be pierced." He claimed Ensign was his employer.

Ensign filed a motion for summary judgment. It said, "Castaneda's allegations against Ensign are misplaced because Ensign was not his employer. Rather than sue Cabrillo, the company that hired him, paid him, set his daily schedule . . . , [he] has sued Ensign and [EFS] [fn. omitted], neither of which was his employer as a matter of law. [¶] . . . Ensign is a holding company that has no employees and is not engaged in the direction, management or control of Cabrillo or its employees." It said Cabrillo was an independent company with "a traditional management structure."

In discovery, Ensign admitted that it owned Cabrillo. It purchased it in 2009 and it owns all of its stock.

In opposition to summary judgment, Castaneda submitted declarations and discovery responses. He claimed they show Ensign was properly classified as an employer because: 1) of its ownership and control over Cabrillo, and 2) it controlled the training, supervision, work requirements, working conditions, and employee benefits for the employees who worked there. Castaneda testified that when he began work at Cabrillo he was advised that he was hired by "Cabrillo Care and Ensign . . . ."

DISCUSSION

*A Triable Issue of Fact*

Castaneda contends there were triable issues of fact regarding whether Ensign was his employer, and consequently the judgment must be reversed. We agree.

"'We review a summary judgment motion de novo to determine whether there is a triable issue as to any material fact . . . .'" (*Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430, 436.) "'We are not bound by the trial court's stated reasons or rationales.'" (*Ibid.*) "'"In practical effect, we assume the role of a trial court . . . ."'" (*Ibid.*) "'Summary judgment is a drastic remedy to be used sparingly, and any doubts about the propriety of summary judgment must be resolved in favor of the opposing party.'" (*Ibid.*)

California law specifies the elements necessary to define an employer. "To employ" has "three alternative definitions." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 64.) "It means: (a) to exercise control over the wages, hours or working conditions, *or*

2.

(b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship."  (*Ibid.*)

The definition of an employer is broad.  The first category includes """any person . . . who directly *or indirectly*, *or through an agent or any other person*, employs *or exercises control* over the wages, hours, or working conditions of [an employee]."""  (*Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 947, italics added.)  Our Supreme Court said this about the second category:  "A proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work *by failing to prevent it, while having the power to do so*."  (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 69, italics added.)

Ensign contends its evidence shows that Cabrillo was Castaneda's employer and the trial court correctly ruled Ensign was not.  But the issue is not whether Ensign can cite evidence supporting its position, it is whether Castaneda has shown triable issues of fact.

An entity that controls the business enterprise may be an employer even if it did not "directly hire, fire or supervise" the employees.  (*Guerrero v. Superior Court*, *supra*, 213 Cal.App.4th at p. 950.)  Multiple entities may be employers where they "control different aspects of the employment relationship."  (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 76.)  "This occurs, for example, when one entity (such as a temporary employment agency) hires and pays a worker, and another entity supervises the work."  (*Ibid*.)  "Supervision of the work, in the specific sense of exercising control over how services are performed, is properly viewed as one of the 'working conditions' . . . ."  (*Ibid.*)  "[C]ontrol over how services are performed is an important, perhaps even the principal, test for the existence of an employment relationship."  (*Ibid*.)

Ensign contends *Martinez* required the trial court to find Cabrillo is the only employer.  We disagree.  In *Martinez*, agricultural employees sued two agricultural purchasing companies that had contracts with their employer--a supplier of agricultural crops.  The contracts involved marketing the crops the employees picked.  The

3.

employees claimed the purchasing companies were their employers because they benefited from the contracts and exerted financial influence on the supplier. Our Supreme Court said the defendants "benefited in the sense that any purchaser of commodities benefits, however indirectly, from the labor of the supplier's employees." (*Martinez v. Combs*, *supra*, 49 Cal.4th at pp. 69-70.) But they were not employers because: 1) the "*undisputed facts . . .* show that [the supplier] *alone* controlled plaintiffs' wages, hours and working conditions" (*id.* at p. 71, italics added); 2) there was no evidence the purchasing companies offered employment to the workers (*id.* at p. 74); 3) the workers did not view the defendants to be supervisors (*id.* at p. 76); 4) the defendants lacked the power to "direct" the "work" of the supplier's employees (*id.* at p. 77); and 5) they lacked the authority to prevent the supplier from paying inadequate wages. The companies in *Martinez* had marketing contracts with each other.

Here Ensign has more than a contractual relationship with Cabrillo. *Ensign owns Cabrillo*. It purchased it in 2009 and it owns all of its stock. A trier of fact could infer this evidence challenged Ensign's claims of lack of control or responsibility. In *Martinez*, the defendants did not own the supplier's business. Had they owned it, a different basis of liability for unpaid wages would exist. "'The basis of liability is *the owner's failure* to perform the duty of seeing to it that the prohibited condition does not exist.'" (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 70, italics added.)

Ensign claims Cabrillo was an independent operation with its own employees. But Castaneda introduced evidence showing, in addition to ownership, Ensign had exercised control over Cabrillo's operations and the employees. Such evidence is relevant in deciding who is an employer. (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 71; *S.G. Borello & Sons Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 356; *Guerreo v. Superior Court*, *supra*, 213 Cal.App.4th at pp. 947, 950.)

Castaneda's evidence showed Ensign's structural and management control over Cabrillo. Ensign owns Cabrillo and other "cluster" or "portfolio" companies that are involved in Cabrillo's operations. Ensign is the sole shareholder of "cluster" companies EFS and Touchstone Care, Inc. (Touchstone). Ensign, Touchstone, EFS and Cabrillo

share the same corporate address in the same suite in Mission Viejo, California. EFS "issues the paychecks" for employees at Cabrillo. A staff person at Ensign's "corporate office" recruits employees that Robert Hambly, the Cabrillo rehabilitation services director, needs to hire. The Cabrillo administrator is supervised by the Touchstone president. Hambly reports to the Touchstone rehabilitation services director. Touchstone is owned by Ensign. Hambly received his employment orientation training at Ensign.

Castaneda presented evidence showing that Ensign had acknowledged its centralized control over its cluster companies. On its Securities and Exchange Commission 10-k form, Ensign said it uses a "service center approach" with its local service providers. "Our Service Center . . . acts as a resource and provides centralized information technology, *human resources*, *accounting*, *payroll*, legal, risk management, educational and other key services, so that local facility leaders can focus on delivering top-quality care . . . ." (Italics added.)

Castaneda also presented evidence showing a seamless flow of corporate officers between Ensign and its clusters. Beverly Wittekind, the Cabrillo secretary, was also the Ensign general counsel and vice president, the EFS attorney and treasurer, and the Touchstone secretary. Gregory Stapley was the EFS president, a Touchstone director, and was formerly the Ensign general counsel and secretary. Soon Burnam, the Cabrillo treasurer, was an EFS employee. Matt Huefner, the Touchstone president, is also the Cabrillo president. By contrast, the supplier in *Martinez* was not subject to such interwoven structural control or centralized outside management.

There is a written agreement between Cabrillo and Ensign that indicates members of the facility staff are Cabrillo's "own" employees. Castaneda contends the agreement is a sham to avoid Ensign's employer obligations. He presented evidence that it was signed by an EFS representative and an EFS employee. He states EFS "was thus present on both sides of the transaction. [T]here is no evidence . . . that any of the provisions of Cabrillo's contract were specifically negotiated between the parties to account for Cabrillo's particular needs and desires." "The parties' use of a label to describe their relationship does not control and will be ignored where the evidence of

5.

their actual conduct establishes a different relationship exists."  (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1434; *S.G. Borello & Sons. Inc. v. Department of Industrial Relations*, *supra*, 48 Cal.3d at p. 356 [corporation could not rely on a contract designating it as a nonemployer where it owned the land and exercised "pervasive control over" the business operations].)  There are triable issues of fact as to whether the contract here reflects Ensign's actual role in the employment relationship.

Castaneda cites evidence showing Ensign supervised and controlled the employees' job functions.  Control "over how services are performed" is a strong factor showing an employment relationship.  (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 76.)  When Ensign took over Cabrillo, it required the employees to "follow" Ensign's "core values," and required them to use "Ensign forms and templates *in the course of doing their jobs*."  (Italics added.)  (*Estrada v. Fedex Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 12 [evidence that a company required workers to use its forms is one factor supporting a finding that it is an employer].)  Ensign instructed the employees that "they *were expected to increase their patient census* and to generate greater revenues."  (Italics added.)  It replaced the "existing computer modems at Cabrillo" and the time clocks.  It installed a new "E-time" clock system that it required all employees to use.  Ensign required employees to use a "fingerprint or thumbprint" to "clock in and clock out."  (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 74 [exercising control over the workers' hours is evidence showing an employer relationship].)

A Cabrillo "department head" said, "The Ensign Group provides policy and training videos at Cabrillo *that I must show* to newly-hired employees."  (Italics added.)  He said that Ensign instituted a new "computer software system used for clinical documentation, billing the government, and improving operational deficiencies," and that the Ensign CEO came to Cabrillo to "evaluate our information technology, management, and delivery of care systems . . . ."  Another declarant said, "Ensign also sent dietary, housekeeping and medical records consultants to Cabrillo to advise departments *on how to perform their duties*."  (Italics added.)

In its motion for summary judgment, Ensign said it had "no employees." But in a brochure Ensign distributed, it said one of its "core values" was to "reward and support *our employees* who treat this facility as if they owned it" (italics added); and that if they "maximized profits," the Cabrillo facility would receive "cash bonuses to be used for building renovation," new equipment, and the facility would have "Ensign flags" to display. Ensign's employee handbook gave notice to employees at Cabrillo that there was an "employee emergency fund" for employees who experienced "economic hardship." In Ensign's Securities and Exchange Commission 10-k form, it said it provided training to the employees on "Medicaid and Medicare billing requirements, updates on new regulations or legislation, emerging healthcare service alternatives and other relevant clinical, business and industry specific coursework."

In *Martinez*, the court noted that the employees' declarations indicated that they believed the supplier was their employer, not the purchasing entities. By contrast, at his deposition, Castaneda testified that when he began his employment he was advised he was hired by "Cabrillo Care and [Ensign] . . . ." He said, "I've got check stubs from Cabrillo and Ensign." He testified the person who processed the payroll worked for "Cabrillo . . . and Ensign." Ensign challenges this evidence, but we do not decide credibility on a summary judgment review. We only determine whether there is a triable issue of fact. Evidence that an employee believes there is "an employer-employee relationship" is a relevant factor. (*Estrada v. Fedex Ground Package System, Inc.*, *supra*, 154 Cal.App.4th at p. 10.)

Castaneda was not the only Cabrillo worker who believed Ensign was the employer. In her declaration, Marilyn Leveque, the nursing supervisor at Cabrillo, said when Ensign took over in 2009, she was required "*to be re-hired by Ensign*." (Italics added.) She said, "Ensign policies [were] explained to me, including procedures for clocking in and out each work day. I was provided and instructed to sign an Ensign handbook." She was informed she "was *now an employee of Ensign*." (Italics added.) In his deposition, Hambly, the Cabrillo rehabilitation services director, testified that when he was hired he believed Ensign was his employer.

There is additional evidence from which a trier of fact could reasonably infer that Castaneda and others who worked at Cabrillo were Ensign employees. Employees do not receive paychecks from Cabrillo. Ensign admitted the checks are "from 'Ensign Facility Services, Inc.'" Signs posted at the facility state "Ensign Group." One is located where labor codes and laws are posted, the other is at the employee time clock area. Employees were given an "e-mail address of . . . @ensigngroup.net." A Cabrillo "department head" said that when he "logged onto [his] computer at Cabrillo, the Ensign logo appeared on the screen." (*Estrada v. Fedex Ground Package System, Inc.*, *supra*, 154 Cal.App.4th at p. 12 [evidence that a company required workers to use its logo is one factor supporting a finding that it is an employer].)

Another declarant said, "Ensign made sweeping changes in the way the facility was run." Mary Spaeder, the Ensign vice president of rehabilitation, "recruited and interviewed employees who worked at Cabrillo." She also "set the rate of pay for employees." (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 74 [exercising control over wages is a factor showing an entity is an employer].)

Castaneda presented evidence showing that traditional employee benefits, including medical, dental, vision and 401(k) savings plans were not the responsibility of Cabrillo. Instead, employees had to use the "Ensign Benefits Call Center" and the "Ensign H R e-Center." (*Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 952 [fact that a company takes responsibility for the workers' pension plans is one factor in support of a finding that it is an employer].) Ensign admitted that "[t]he Cabrillo facility does not contribute towards the 401(k) retirement plan for employees who work at Cabrillo." Ensign also admitted that: 1) Castaneda's worker's compensation claims case documents designated "The Ensign Group, Inc. as his employer," and 2) Ensign paid his workplace injury expenses. The Cabrillo "Human Resources & Accounts Payable Director . . . [did] not know whether Cabrillo has a payroll account."

Castaneda presented evidence that Ensign handled issues of employee discipline at Cabrillo. In her declaration, Cynthia Deibert, the Cabrillo social services director, said when she made a complaint about another employee it was not submitted to

Cabrillo.  Instead, she was required to fill out an "Ensign complaint form" and send it to the Ensign "HR Department."  A trier of fact could reasonably infer the assumption of responsibility for employee discipline is the type of authority used by an employer.  There are triable issues of fact.

The parties raise the issue of whether the integrated enterprise test developed by the federal courts applies to California employment cases.  But because we rely exclusively on California case law, we need not decide this issue.

The judgment is reversed.  Costs on appeal are awarded in favor of appellant.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

9.

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Ehlert Appeals, Allison L. Ehlert; Baltodano & Baltodano LLP, Hernaldo J. Baltodano, Erica Flores Baltodano for Plaintiff and Appellant.

Horvitz & Levy LLP, Lisa Perrochet, John F. Querio; Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Dawn T. Collins for Defendants and Respondents.