**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACQUELINE BENJAMIN, individually and on behalf of all others similarly situated; BRYAN GONZALEZ, individually and on behalf of all others similarly situated; TAIWO KOYEJO, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, <br><br> v. <br><br> B & H EDUCATION, INC. *Defendant-Appellee.* | No. 15-17147 <br><br> D.C. No. 3:13-cv-04993-VC <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted September 11, 2017
San Francisco, California

Filed December 19, 2017

Before: Mary M. Schroeder and Richard C. Tallman,
Circuit Judges, and Robert H. Whaley,[*] District Judge.

Opinion by Judge Schroeder

---

[*] The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's summary judgment in favor of the defendant in an action brought under the Fair Labor Standards Act by students of cosmetology and hair design.

The panel held that, under the "economic reality" test, the students were not employees under the FLSA even though they alleged that much of their time was spent in menial and unsupervised work. Agreeing with other circuits, the panel held that a "primary beneficiary" analysis, rather than a test formulated by the Department of Labor, applies in the specific context of student workers. The panel concluded that the students, not defendant's schools, were the primary beneficiaries of their own labors because at the end of their training they qualified to practice cosmetology.

The panel held that the students also were not employees entitled to be paid under Nevada or California law.

The panel further held that the district court did not abuse its discretion by striking declarations as a sanction under Federal Rule of Civil Procedure 37.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Bryan J. Schwartz (argued) and Logan Talbot, Bryan Schwartz Law, Oakland, California; Leon Greenberg and Dana Sniegocki, Law Office of Leon Greenberg, Las Vegas, Nevada; Chaya M. Mandelbaum and Michelle G. Lee, Rudy Exelrod Zieff & Lowe LLP, San Francisco, California; for Plaintiffs-Appellants.

Robert Lane Morris (argued), Soltman Levitt Flaherty & Wattles LLP, Thousand Oaks, California, for Defendants-Appellees.

**OPINION**

SCHROEDER, Circuit Judge:

Plaintiffs are students of cosmetology and hair design at schools in California and Nevada operated by defendant B&H Education, Inc., under the name of Marinello Schools of Beauty. Plaintiffs claim that they are employees within the meaning of the Fair Labor Standards Act ("FLSA"), and under California and Nevada state law, on the ground that much of their time is spent in menial and unsupervised work, and that they are therefore entitled to compensation. The District Court granted summary judgment for B&H on the FLSA claim, holding that under the test applicable to such claims, the Plaintiffs, not the schools, are the primary beneficiaries of their own labors because at the end of their training they qualify to practice cosmetology. Moreover, state law requires clinical training that includes maintenance of a clean and sanitary work environment and does not require that all client work be supervised. The District Court

also granted summary judgment for B&H on Plaintiffs' claims under California and Nevada state law. We affirm.

## Factual and Procedural Background

Marinello Schools of Beauty is a for-profit school that offers discounted cosmetology services to the public through salons staffed by vocational students who do not receive compensation. Marinello is licensed to operate in California and Nevada, and provides both classroom instruction and clinical experience for students. Students must complete a minimum number of instruction hours before participating in the clinic and working on customers. *See* Cal. Code Regs., tit. 16, § 950.12; Nev. Rev. Stat. § 644.408.

Cosmetologists are required under California and Nevada law to be individually licensed. Cal. Code Regs., tit. 16, § 976; Nev. Rev. Stat. § 644.190(2). State law requires that, before applicants may take the licensing exam, they must take part in hundreds of hours of classroom instruction, including observing demonstrations, and practical training that includes performing services on a person or mannequin. *See* Cal. Code Regs., tit. 16, §§ 950.2, 928(a); Nev. Rev. Stat. §§ 644.200, 644.204, 644.400(2). The state licensing exam tests sanitation and cleaning knowledge as well as cosmetology skills. Cal. Bus. & Prof. Code § 7338; Nev. Rev. Stat. §§ 644.240, 644.244. Students at Marinello attend lectures, review course materials, take tests, and practice cosmetology on customers in the clinic under some instructor supervision, thereby allowing them to earn academic credit toward qualifying them to take the state licensing exam. In the clinic, students not only practice cosmetology itself, including hair, skin, and nail treatments, but perform selected duties that include sanitizing their work stations, laundering

linens, dispensing products, greeting customers, making appointments, and selling products.

Plaintiffs in this case are Jacqueline Benjamin and Taiwo Koyejo, cosmetology students at Marinello in California, and Bryan Gonzalez, a hair design student at Marinello in Nevada. In January 2015, Plaintiffs filed a Second Amended Collective and Class Action Complaint in the District Court for the Northern District of California. Plaintiffs claimed that, rather than properly educate and train them in cosmetology, B&H exploited the Plaintiffs for their unpaid labor. B&H did this, Plaintiffs claimed, by not paying them for their work in Marinello's salons, by leaving them unsupervised in the salon, and by requiring them to perform services that they already could do as opposed to services that they needed to learn for the licensing exams. Plaintiffs also claimed B&H unlawfully kept the salon's profits, Plaintiffs' tuition fees, the money Plaintiffs spent when required to purchase Marinello's salon supplies to service paying customers, as well as heavy fines that B&H imposed on Plaintiffs for tardiness and absences during scheduled salon shifts. Plaintiffs sought payment for minimum and overtime wages, premium wages for missed meal and rest breaks, civil penalties for violating wage laws, restitution of fines, and reimbursement for supply purchases. Plaintiffs also requested declaratory judgment that B&H's practices violated federal and state law.

Plaintiffs moved for summary judgment, asserting that the students were employees under federal and state law. B&H filed a cross-motion for summary judgment, contending the Plaintiffs were students, not employees. In response to B&H's cross-motion for summary judgment and to support the allegations of the complaint, Plaintiffs relied in part on

witness declarations from three individuals who Plaintiffs had not disclosed to B&H pursuant to Federal Rule of Civil Procedure 26. The District Court therefore ordered the declarations stricken pursuant to Rule 37. The District Court then granted B&H summary judgment and denied Plaintiffs' motion for summary judgment. Applying the primary beneficiary test set forth in *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376 (2d Cir. 2015), *amended and superseded by* 811 F.3d 528 (2d Cir. 2016), and *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199 (11th Cir. 2015), the District Court held that Plaintiffs were not employees under federal or state law because Plaintiffs were the primary beneficiaries of the educational program and they had not shown that Marinello subordinated the educational function of its clinics to its own profit-making purposes.

Plaintiffs appeal, challenging the District Court's rulings under both federal and state law, as well as the Rule 37 ruling.

## Discussion

I.   Federal law under the FLSA

The essence of Plaintiffs' claim is that they should be treated as employees rather than students. Therefore, our analysis under federal law must begin with the distinction that has developed between students, or interns, on the one hand and employees on the other. The seminal case is *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) (*Portland Terminal*), involving trainees working alongside railroad workers, and it has remained the guiding source of the principles governing cases involving claims of both trainees and students seeking to be treated as employees.

In *Portland Terminal*, the Supreme Court had to interpret bare bones provisions of the FLSA to determine whether railroad trainees were employees. 330 U.S. at 152–53. The FLSA defines an employee to be "any individual employed by an employer"; it defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(e)(1), (g). The United States Department of Labor ("DOL") sought an injunction against a railroad for failing to pay its trainees minimum wages under the FLSA. Because the trainees were performing work for the railroad, DOL contended they were required to be paid by the railroad as employees. *See Portland Terminal*, 330 U.S. at 149. The railroad responded that it was providing training that benefitted the trainees, because the training they were receiving would qualify them to serve and be compensated as employees. *Id.* at 149–50. After reviewing the factors it deemed relevant, the Court ruled in favor of the railroad. *Id.* at 153. It reasoned that the trainees, not the railroad, were the direct beneficiaries of the system and were therefore not employees of the railroad. *Id.*

A number of important factors contributed to that conclusion. The railroad provided a week-long practical training course to the trainees, who were all prospective yard brakemen. *Id.* at 149–50. At the completion of the training, the railroad certified the trainees as qualified to be railroad employees. *Id.* at 150. The trainees did not displace regular employees, and the trainees' work sometimes impeded the railroad's business. *Id.* at 149–50. The railroad's supervisors often oversaw the trainees' work, and the trainees never expected any remuneration for the training period. *Id.* at 150. Once certified, the trainees' names were placed on a list of qualified workers from which the railroad could draw for paid work when needed. *Id.* In short, the trainees derived a major benefit by becoming qualified to do paid work, where the

railroad bore some burden and inconvenience in the short run. In finding that the trainees were not employees under the FLSA, the Court observed that "the railroads receive no 'immediate advantage' from any work done by the trainees . . . ." *Id.* at 153. The Court held the trainees were not employees. *Id.*

It is important for our purposes that in so holding, the Court expressly compared the trainees to students in an educational setting, emphasizing that students are not employees. The Court noted that the FLSA's definition cannot be read so broadly as to include all students as "employees of the school or college they attend" and that had the "trainees taken courses in railroading in a public or private vocational school, wholly disassociated from the railroad, it could not reasonably be suggested that they were employees of the school within the meaning of the [FLSA]." *Id.* at 152–53.

Since *Portland Terminal*, the Supreme Court has, in a handful of cases outside the educational context, further refined the employment relationship test under the FLSA, finding that the "test of employment under the [FLSA] is one of 'economic reality.'" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (holding that the test of employment under the FLSA is the economic reality test)) (*Alamo*); *accord Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (noting that whether an individual is an employee under the FLSA depends not on "isolated factors but rather upon the circumstances of the whole activity").

In *Alamo*, the Supreme Court's most recent discussion of the economic realities test in the employment context, the DOL sued a non-profit religious foundation for violating the minimum, overtime, and record-keeping provisions of the FLSA. 471 U.S. at 291–92. The religious foundation ran several commercial businesses, including service stations, clothing and grocery stores, hog farms, a motel, construction companies, candy companies, and record-keeping companies. *Id.* at 292. Staffing the foundation's businesses were "volunteers," who were former drug addicts, derelicts, or criminals that the foundation had converted and rehabilitated. *Id.* In exchange for their services, the volunteers received food, clothing, shelter, and other benefits from the foundation, but no cash salaries. *Id.* The Court held that the "volunteers" were actually employees under the economic realities test. *Id.* at 301, 306. Two factors were particularly significant. First, the volunteers were entirely dependent economically upon the foundation for long periods of time, and in some cases several years. *Id.* at 301. Second, the volunteers expected to receive in-kind non-cash benefits in exchange for their services, which amounted to "wages in another form." *Id.* Because the volunteers "work[ed] in contemplation of compensation," they were employees under the FLSA. *Id.* at 306. The Court looked to the economic reality of the situation and held it involved work for compensation and hence employment.

While our Court has not previously addressed a situation involving interns or vocational students under the FLSA, we have followed *Alamo* and *Portland Terminal* by applying a four-part economic reality test looking to the totality of the circumstances when determining whether individuals are employees under the FLSA. We have considered situations involving prison inmates and homeless persons in

rehabilitation programs. *See Hale v. Arizona*, 993 F.2d 1387, 1389 (9th Cir. 1993) (en banc); *see also Williams v. Strickland*, 87 F.3d 1064, 1065 (9th Cir. 1996). In such cases, we looked to the overall economic realities of the relationship: "whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Hale*, 993 F.2d at 1394 (citing *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). We held that neither the prison inmates nor the rehabilitation participants were employees. *Id.* at 1395; *Strickland*, 87 F.3d at 1067. This is because there was no bargained-for compensation relationship in either case. The prisoners worked because they had to work. *Hale*, 993 F.2d at 1394. And the rehabilitation participants had no expectation of compensation other than treatment. *Strickland*, 87 F.3d at 1067.

The DOL, the agency that administers and enforces the FLSA, has struggled with formulating the appropriate test or guidelines to apply in dealing with issues relating to interns/employees. On the basis of *Portland Terminal*, the DOL issued informal guidance in 2010 as to whether unpaid interns are employees under the FLSA. *See* Wage & Hour Div., U.S. Dep't of Labor, *Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act* (Apr. 2010), https://www.dol.gov/whd/regs/compliance/whdfs71.pdf. Under the DOL's six-factor test, an intern is an employee unless all of the following factors are met:

> 1. The internship, even though it includes actual operation of the facilities of the

employer, is similar to training which would be given in an educational environment;

2. The internship experience is for the benefit of the intern;

3. The intern does not displace regular employees, but works under close supervision of existing staff;

4. The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded;

5. The intern is not necessarily entitled to a job at the conclusion of the internship; and

6. The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

*Id.*

The leading recent Court of Appeals decision to consider the DOL test however, rejected it as "too rigid" and too dependent on the particular facts of *Portland Terminal*. *Glatt*, 811 F.3d at 536. The court in *Glatt* also rejected the plaintiffs' main argument, one that essentially turned *Portland Terminal* on its head. *Portland Terminal* had said that because "the railroads receive no 'immediate advantage' from any work done by the trainees, we hold that they are not employees within the [FLSA's] meaning." 330 U.S. at 153. The plaintiffs in *Glatt*, however, argued that if the employers

received any economic benefit, the plaintiffs were employees. 811 F.3d at 535. The Second Circuit ruled such a position was not consistent with *Portland Terminal*. *Id.* at 537.

The Second Circuit in *Glatt* vacated the district court's order, that had adopted the DOL test, in favor of a different test. *Id.* at 538. The appellate court held that the appropriate test for determining whether interns should receive compensation under the FLSA and New York labor law should be what it termed the "primary beneficiary test." *Id.* at 536. The Second Circuit's opinion set forth a list of seven non-exhaustive factors for courts to weigh and balance under the test. *Id.* at 536–37. The factors are:

> 1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.

> 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

> 3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

*Id.*

The Second Circuit explained it chose the primary beneficiary test due to the test's three important features. *Id.* at 536. First, the test "focuses on what the intern receives in exchange for his [or her] work," which incorporates *Portland Terminal's* focus on the interest of trainees. *Id.* Second, the test allows courts flexibility in examining the economic reality between the intern and the employer, which follows the Supreme Court's economic reality test cases. *Id.* And third, the test acknowledges the distinction between intern-employer relationships, in which interns typically expect to receive educational or vocational benefits, and employee-

employer relationships, in which employees do not necessarily expect to receive such benefits. *Id.*

Other courts have adopted either *Glatt's* primary beneficiary test or have established a similar test in cases involving interns or trainees. *See Schumann*, 803 F.3d at 1211–12 (expressly adopting the *Glatt* primary beneficiary test); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 529 (6th Cir. 2011) (discussing relevant factors for courts to consider when analyzing "which party derives the primary benefit from the relationship") (*Laurelbrook*).

The cases have arisen in a variety of contexts. In *Glatt*, the plaintiffs were unpaid interns working for a film production company, and the interns argued that they were owed compensation as employees under the FLSA and New York labor law. 811 F.3d at 531–33. During their internships, one plaintiff was enrolled in a degree program, and the other two plaintiffs were not. *Id.* at 532–33. After adopting the primary beneficiary test, the Second Circuit remanded the case for the district court to apply it. *Id.* at 538.

In *Schumann*, nursing students sought wages under the FLSA for work performed in the school's clinic, which was a prerequisite to obtaining a master's degree in the students' program. 803 F.3d at 1202. The Eleventh Circuit adopted *Glatt's* primary beneficiary test and remanded the case to the district court to determine whether the students were employees based on the test. *Id.* at 1211–13.

In *Laurelbrook*, the DOL had sought an injunction against a religious school for allegedly violating the FLSA, arguing that students who were engaged in practical, vocational training to learn various trades and serve sanitarium patients,

were employees. 642 F.3d at 519–21. The Sixth Circuit upheld the district court's conclusion that the students were not employees, noting that the school benefitted from receiving payment for students' services, and that the hours students worked allowed the sanitarium to satisfy its licensing requirements, but that the students, not the school, were the primary beneficiaries. *Id.* at 530–32. The benefits to the school were offset by the burdens, because students did not reduce the number of compensated workers, and instructors had to spend extra time supervising students at the expense of performing productive work. *Id.* at 530–31. The students, on the other hand, received the important benefits of gaining hands-on, practical training that allowed them to be competitive in a variety of vocations upon graduation, to learn how to operate tools used in the trades they were studying, to earn credit for courses approved by the state accrediting agency, and to develop a strong work ethic and leadership skills. *Id.* at 531. Therefore, the Sixth Circuit concluded the students were the primary beneficiaries and hence were not employees.

The primary beneficiary analysis by our sister circuits in *Glatt*, *Schumann*, and *Laurelbrook* represent applications of the Supreme Court's economic realities test, and the courts evaluated the totality of the circumstances of each case as the Supreme Court has directed. *See Rutherford Food Corp.*, 331 U.S. at 730; *Schumann*, 803 F.3d at 1210; *Glatt*, 811 F.3d at 536; *Laurelbrook*, 642 F.3d at 522. *Glatt* in particular provides a helpful list of factors for courts to consider in the specific context of student workers. We agree with those decisions that the primary beneficiary test best captures the Supreme Court's economic realities test in the student/employee context and that it is therefore the most

appropriate test for deciding whether students should be regarded as employees under the FLSA.

## II. Applying the primary beneficiary test

The primary beneficiary test as articulated in *Glatt* includes at least seven factors. Applying them to the facts of this case, most if not all militate toward concluding that Plaintiffs are students. With respect to the first, there is no dispute that Marinello students signed on knowing they would not receive remuneration and did not expect compensation. Under the second and third factors, Marinello students received hands-on training in the clinic and academic credit for the hours they worked. The students' clinical work corresponded to their academic commitments under the fourth factor because clinical work allowed students to clock the hours they needed to sit for the state licensing exams. *See* Cal. Code Regs., tit. 16, §§ 950.2, 928(a); Nev. Rev. Stat. §§ 644.200, 644.204, 644.400. Fifth, nothing in the record suggests that Marinello required its students to participate in their programs for longer than was necessary to complete their hour requirement for the state exams. Under the sixth factor, students did not routinely displace the work of paid employees as the school maintained staff to instruct students, run clinics, operate front desks, inventory and stock the dispensary, handle the logistical needs of the clinics, and perform nighttime janitorial services. Finally, students had no expectation of employment with Marinello upon graduation. In summary, application of the *Glatt* factors establishes that students were the primary beneficiaries of their labors. Their participation in Marinello's clinic provided them with the hands-on training they needed to sit for the state licensing exams. Applying the primary

beneficiary test we must conclude they were not employees under the FLSA.

Plaintiffs nevertheless urge us to apply the DOL test in determining the employment relationship in this case. We agree with the Second Circuit in *Glatt*, however, that the DOL's test is not appropriately utilized as a test applicable to a variety of circumstances, as it is so closely tied to the facts in *Portland Terminal*. As the Second Circuit said, the DOL's test "is essentially a distillation of the facts discussed in *Portland Terminal*," *Glatt*, 811 F.3d at 536, and thus "too rigid" to comport to our case law, which applies a totality of the circumstances approach to determining the employment relationship under the FLSA. *See, e.g.*, *Hale*, 993 F.2d at 1394.

Even if we were to apply the DOL test, however, it would not in all likelihood materially change the result in this case. Applying the DOL criteria in this case, we view the training provided to Plaintiffs to be in an educational environment, because state law requires students to clock hundreds of hours of instruction and practical training in order to qualify for taking the licensing exams. Students benefit because the students learn skills tested on the licensing exams and are able to sit for the exams. Students do not displace regular employees, they are not entitled to a job at the end of their clinical experience, and they have understood they would not receive compensation. Under the DOL test as applied to the facts before us, we would similarly conclude Plaintiffs are not employees.

III.     State law claims

The Plaintiffs argue that even if they are not employees under the FLSA, they should be paid under Nevada and California law.  With respect to Nevada, however, the parties agree that the test for determining whether an employment relationship exists is the same as it is under the FLSA.  *See Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 957 (Nev. 2014).  We therefore apply the primary beneficiary test to the Nevada law claims as well, and the students' claim under Nevada law fails for the same reasons that the FLSA claim fails.

California law is a little different, since California courts have distinguished California's wage law from the FLSA with respect to the definition of employment.  *See Martinez v. Combs*, 231 P.3d 259, 274 (Cal. 2010).  "Employees" are entitled to recover unpaid minimum and overtime wages pursuant to California Labor Code § 1194 under the terms of the applicable wage order that is issued by the Industrial Welfare Commission ("IWC"), the body in charge of regulating California's minimum wage laws, *id.* at 271, and to which the California Supreme Court defers, *id.* at 275.  The IWC wage orders include a definition of employer as one who "employs or exercises control over the wages, hours, or working conditions of any person."  *Id.* at 274 (quoting Cal. Code Regs., tit. 8, § 11140(2)(G)).

Plaintiffs rely on *Martinez* and its deference to the IWC to argue that they must be employees subject to a wage order. But *Martinez* does not help them.  In *Martinez*, the California Supreme Court held that produce merchants were not liable to seasonal agricultural workers for minimum wages under § 1194.  *Id.* at 282–87.   The   workers   had   harvested

strawberries for a farm operator who then sold the strawberries to the merchants. *Id.* at 262–63. The workers sought compensation from the merchants because the farm operator who hired the workers went bankrupt. *Id.* at 263. In reaching its holding, the court defined the employment relationship under § 1194 by looking to the applicable wage order. *Id.* at 278. The California Supreme Court held the merchants were not the workers' employer, which required control over hours and working conditions. *Id.* at 285–87. The farm operator was the employer.

Plaintiffs contend that under this definition they are employees because Marinello controls what they do. *See id.* at 278. The control test, however, does not assist us in the educational context, where the school is in charge. As the District Court noted in this case, schools typically exercise significant control over their students, but that does not make them employers. Moreover, none of the California cases cited by Plaintiffs involve an educational context. All involved employees claiming they were being paid less than minimum wages. *See Torres v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 391, 391 (C.D. Cal. 2014) (plaintiffs were paid by Air to Ground Services to clean FedEx planes); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2014 WL 4365074, at *1 (N.D. Cal. Sept. 3, 2014) (plaintiff was hired by a temporary staffing agency); *Arredondo v. Delano Farms Co.*, 922 F. Supp. 2d 1071, 1073–74 (E.D. Cal. 2013) (plaintiffs worked for farm labor contractors plaintiffs claimed violated wage and hour laws); *McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-9366 PSG (MRWx), 2013 WL 153860, at *1 (C.D. Cal. Jan. 15, 2013) (plaintiff was a paid hourly employee at two family restaurants he claimed were violating wage law); *Rodriguez v. SGLC, Inc.*, No. 2:08-cv-01971-MCE-KJN, 2012 WL

5704403, at *1–2 (E.D. Cal. Nov. 15, 2012) (plaintiffs were paid Mexican farm laborers admitted to work in the United States under temporary visas, and they sued their two employers for failure to pay sufficient wages); *Gonzalez v. Millard Mall Servs., Inc.*, No. 09cv2076-AJB(WVG), 2012 WL 727867, at *1 (S.D. Cal. Mar. 6, 2012) (plaintiffs were janitors claiming they were employees of two affiliated companies); *Castaneda v. Ensign Grp., Inc.*, 177 Cal. Rptr. 3d 581, 582 (Cal. Ct. App. 2014) (plaintiff was employee of nursing facility suing the facility's corporate owner for unpaid minimum and overtime wages); *Guerrero v. Superior Court*, 153 Cal. Rptr. 3d 315, 319 (Cal. Ct. App. 2013) (plaintiff paid to provide in-home support services sued employers for wage and hour law violations).

In this case, the California Supreme Court would have no reason to look to the wage order definition of employer to determine whether these plaintiffs are students or employees. The test it establishes for employment is one of "control" that cannot be usefully applied to a school. As we have seen, the test is frequently applied to determine which entity is liable to an employee for minimum wages. A typical plaintiff is an employee seeking a deeper pocket. *See, e.g.*, *Martinez*, *supra*; *Castaneda*, *supra*. Here, Plaintiffs were never hired by any entity as an employee. They are not entitled to be paid any wages.

We further conclude that the California Supreme Court would not apply the DOL factors that the federal courts have rejected as too rigid, but would instead apply a test more similar to the FLSA primary beneficiary test. This is because such a test is better adapted to an occupational training setting than the DOL factors. *See Schumann*, 803 F.3d at 1209, 1211–12; *Glatt*, 811 F.3d at 536–37; *Laurelbrook*, 642 F.3d

at 528–29. Plaintiffs' California state law claim thus fails for the same reasons as the federal law claim fails.

We recognize that Plaintiffs are doubtless unhappy with the quality of the education they received. The appropriate remedy, however, is not for courts to order students to be paid as employees. The state boards in Nevada and California provide their own mechanisms for disciplining schools for unsatisfactory performance. In California, for instance, the State Board of Barbering and Cosmetology may revoke, suspend, or deny approval of a school for repeated failure to comply with the Board's regulations. *See* Cal. Bus. & Prof. Code § 7362(c)(3). Similarly, in Nevada, the State Board of Cosmetology may take disciplinary action against a school of cosmetology for failure to comply with the Board's requirements and regulations. *See* Nev. Rev. Stat. § 644.430(1)(a), (2). There may also be remedies under state tort or contract law for recovery of improper fees, tuition, or penalties paid to the schools. Our Court's role in this appeal is only to determine under applicable federal or state law whether Plaintiffs are employees, and they are not.

## IV.     Federal Rule of Civil Procedure 37

The final matter we must address is a discovery dispute. Plaintiffs offered three declarations to support their motion for summary judgment, but they came from witnesses who had not been listed as witnesses pursuant to Rule 26. The court struck the declarations as a sanction under Rule 37(c)(1). The District Court's order was not an abuse of discretion. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–06 (9th Cir. 2001) (reviewing the imposition of a Rule 37 discovery sanction for abuse of discretion).

Plaintiffs argue that they identified one of the witnesses in an interrogatory response's catchall reference to "other current and former Student-Employees of Marinello," but this does not satisfy the requirements for a Rule 26 disclosure. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"). For the other two witnesses, Plaintiffs argued that they mentioned the witness names in an interrogatory response, but this was also insufficient. *See Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72–73 (E.D.N.Y. 2012) (collecting cases holding that mentioning a witness' name in an interrogatory response is insufficient for Rule 26 purposes).

Plaintiffs have not shown that their failure to disclose was substantially justified or harmless, as required under Rule 37(c)(1), when they waited until the motion for summary judgment stage to identify likely witnesses. *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 498–99 (9th Cir. 2009); *Yeti by Molly, Ltd.*, 259 F.3d at 1105–07; *see also Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1105 n.8 (C.D. Cal. 2007) ("[F]ailure to disclose . . . a likely witness before defendants' summary judgment motion was filed prejudiced defendants by depriving them of an opportunity to depose him."). There was no error in the District Court's refusal to consider the declarations.

Finally, however, even if the stricken witness declarations had been considered, they would in all likelihood have made no material difference to the District Court's ruling on the

summary judgment motions. The information contained in the witness declarations added little more than colorful illustration to the allegations of the complaint that were inadequate as a matter of law to make out an employment relationship.

V.  Conclusion

The District Court correctly determined that the Plaintiffs were not employees of the schools in which they enrolled for training as cosmetologists. Plaintiffs are not entitled to recover wages, the only relief they seek here. Further, the District Court did not err in its handling of discovery issues. Its judgment must therefore be affirmed.

**AFFIRMED.**