Filed 6/15/26  Sun v. Bernal CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JEN SUN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KATHLEEN BERNAL,<br><br>    Defendant and Respondent. | 2d Civ. No. B346683<br>(Super. Ct. No.<br>2023CUBC006595)<br>(Ventura County) |

Jen Sun sued Kathleen Bernal for breach of contract and breach of covenant of good faith and fair dealing after she (respondent) terminated the residential purchase agreement, in which she had agreed to sale her home to Sun subject to certain terms.  The trial court granted Bernal's motion for summary judgment.

On appeal, Sun contends the judgment should be reversed because triable issues of fact exist regarding whether Bernal identified her "Home of Choice," and whether she terminated the agreement in good faith.  We affirm.

*Factual Background*

In September 2021, Sun and Bernal entered into a residential purchase agreement (RPA) for the sale of Bernal's home (the "Santo Property") for $875,000. Bernal and Sun agreed that the RPA was "[s]ubject to the successful close of escrow of [Bernal's home of choice] once identified" (the "HOC Contingency"). Bernal, a licensed real estate salesperson, represented herself in the transaction. Sun was represented by real estate agent, Craig Parry.

In October 2021, Bernal was preapproved for a $600,000 home loan at a rate of 3.25 percent over a 30-year term. Bernal made six offers on different homes in Westlake Village but was outbid by other buyers. While Bernal was looking for a HOC, interest rates were rising in the real estate market, which meant her purchasing power was decreasing because she could not afford higher monthly payments.

On March 9, 2022, approximately six months after entering into the RPA, Bernal identified the "Triunfo Property" as her "Home of Choice" pursuant to the HOC term of the RPA with Sun. She informed Parry, Sun's real estate agent, via text that same day:

"[Bernal]: Hi, I found a home off market and opening escrow tomorrow. But it's a lot more than I can spend.

"Matteo in capri came up. $899,000 agent said they got way higher. It does not compare to my home. I would need to increase purchase price to be able to move forward. Let's chat tomorrow. [crying emoji].

"[Parry]: Okay

"When are you scheduled to close?

"[Bernal]: "June.

"Or maybe sooner with a rent back."

On March 14, 2022, Bernal executed a written offer for the Triunfo Property for $1,057,000, and escrow opened shortly thereafter. Bernal attempted to meet with Parry and Sun to discuss modifying the terms of the RPA, but they were unwilling to do so. On March 21, 2022, Bernal executed a written cancellation of the RPA and emailed a copy to Parry, stating in her email: "I am cancelling contract based on the terms of the contract. I cannot qualify and secure a replacement property at the current terms based on the market conditions." Bernal also informed Parry that she was relisting the Santo Property subject to the cancellation of previous escrow.

On March 25, 2022, Bernal received an offer for the Santo Property for $1,010,000, and executed a Residential Purchase Agreement with the buyers. The RPA incorporated a counteroffer, which provided that the sale was " '[s]ubject to the successful close of escrow of HOC [Triunfo Property] already in escrow.' "

On April 26, 2022, Bernal's loan broker, Gino Olivo, sent her an email stating, " 'When you started your loan pre-approval back in Oct. 2021, the rate I quoted you was a 3.25% for a 30 year fixed home loan at $600,000 loan amount. The Purchase price was $1,000,000 [Triunfo Property] so 60% loan to value. The current rate is now 5.25% for the same loan. Your ratios are now about 58% debt to income. I can only qualify you for a Max 50% loan to value.' "

Bernal was able to obtain approval from Olivo for a $475,000 loan at a rate of 3.875 percent for a 30 year term to purchase the Triunfo Property. Escrow closed on the Santo Property, and a grant deed was recorded on May 3, 2022. Bernal

3

closed escrow on the Triunfo Property, and a grant deed was recorded on May 13, 2022.

*Procedural Background*

Sun sued Bernal for breach of contract and breach of the implied covenant of good faith and fair dealing.[1] Sun alleged that Bernal cancelled the contract "without identifying a HOC" and that she did so to obtain a higher price for the Santo Property, not because rising interest rates disqualified her from her HOC.

The trial court granted summary judgment in favor of Bernal because "under the terms of the contract, . . . Bernal had a right to cancel the contract due to her inability to secure a Home of Choice." The trial court found that the HOC Contingency was not ambiguous as to the phrase "once identified"; that Bernal's text message to Parry on March 9 sufficiently "identified" her HOC for purposes of the HOC Contingency; and that her cancellation of the contract was not in bad faith.

The trial court entered judgment on April 3, 2025.

*Standard of Review*

A trial court properly grants summary judgment where no triable issue of material fact exists, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action. (*Aguilar v. Atlantic*

---

[1] Sun's operative second amended complaint also alleged, as to Bernal, causes of action for fraud, negligent nondisclosure, equitable conversion, and a common count for assumpsit. Sun does not address these causes of action, so we do not discuss them.

4

*Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc, § 437c, subd. (p)(2).)

The standards applicable to appellate court review of a motion for summary judgment are well established. We independently examine the record to determine whether triable issues of fact compel reinstating the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We liberally construe the evidence supporting the party opposing the motion and resolve any doubts in his or her favor. (*Regents*, *supra*, 4 Cal.5th at p. 618; *Castaneda v. Ensign Group, Inc.* (2014) 229 Cal.App.4th 1015, 1019 (*Castaneda*).) However, speculation is not evidence that can be used in opposing a motion for summary judgment. " 'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' " (*Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA* (2016) 6 Cal.App.5th 443, 459 (*Advent*), quoting *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)

*Breach of Contract*

Sun contends Bernal breached by canceling the RPA without identifying her HOC. Bernal insists that she did identify her HOC in the March 9, 2022 text to Parry, and was well within her right to cancel the contract because she could not comply with the HOC contingency through no fault of her own.

The elements of a breach of contract claim are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. (*Salami v. Los Robles Regional Medical Center* (2024) 103 Cal.App.5th 1023, 1027.)

The interpretation of a contract is a judicial function. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) A contract must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting." (Civ. Code, § 1636.) "Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect." (*Parsons*, at p. 865; *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., Inc.* (1968) 69 Cal.2d 33, 37-39.)

"When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. [Citations.] When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual

6

conflict is to be resolved by the jury. [Citations.]" (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.)

Sun argues that the HOC contingency is ambiguous because it is "reasonably susceptible to more than one interpretation." He argues that Parry understood the March 9 text not as an identification of Bernal's replacement home, but as a demand for Sun to increase the Santo Property price. Sun states, "The March 9 text did not mention the Triunfo Property by name, address, or escrow number. . . . At best, it refers to a possible property 'off-market' without specificity."

But nothing in the agreement required Bernal to specifically identify the HOC by name, address, or escrow number. To be sure, the express terms of the agreement state only that the RPA was "[s]ubject to the successful close of escrow of sellers HOC *once identified*." (Italics added.) As the trial court reasonably concluded, "It is apparent that the HOC was identified at the time Parry asked when escrow is scheduled to close on the identified property."

Sun disagrees. He asserts that this conclusion "ignores Parry's declaration to the contrary." That is, that Parry understood Bernal's text to be a price renegotiation and therefore, a factual dispute exists concerning whether an HOC was identified.

But Parry's declaration acknowledges that, "On March 9, 2022, Kathleen Bernal informed me via text message that she had found a replacement home and would be opening escrow the next day, March 10, 2022." Although Bernal could have identified the Triunfo Property with greater specificity, her failure to do so does not render the identification incomplete. Like the trial court, we reject Sun's proffered interpretation

because it adds terms to the RPA that were not intended by the parties.

Sun's reliance on *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578 is misplaced. There, lessees of a space at a mobile home park sued their landlord for, among other things, breaching the lease by failing to take action against a troublesome neighbor. (*Id.* at pp. 584-586.) The trial court granted summary judgment for the landlord on the basis that the landlord did not owe the lessees a duty to evict the neighbor. (*Id.* at pp. 586-587.) The Court of Appeal reversed, concluding that there were triable issues of fact as to whether the landlord breached its obligation under the lease to preserve the lessees' quiet enjoyment. (*Id.* at pp. 593, 598.)

Here, unlike the lease agreement at issue in *Andrews*, the express terms of the RPA did not require Bernal to do anything other than identify her HOC. The trial court therefore properly adjudicated this cause of action in Bernal's favor.[2]

*Breach of Covenant*
*of Good Faith and Fair Dealing*

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.) Where a contract grants one party discretionary power affecting the rights of another, that discretion "must be exercised in good faith." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372.) " 'The issue of whether the implied covenant of

_____

[2] Because we so conclude, we do not address Bernal's additional contention that Sun cannot establish causation.

8

good faith and fair dealing has been breached is ordinarily "a question of fact unless only one inference [can] be drawn from the evidence." ' " (*Moore v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 280, 292, quoting *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 509.)

The HOC Contingency vested Bernal with discretion to cancel the RPA if she was unable to close escrow on her home of choice once identified. Bernal terminated the RPA with Sun on the basis that she was unable to close escrow on the Triunfo Property without increasing the sale price of the Santo Property.

In finding that Bernal was entitled to summary judgment, the trial court explained: "there are no facts which would establish [Bernal] breached the covenant of good faith and fair dealing. She attempted to timely find a HOC but was outbid. . . . By the time she secured a HOC, it was necessary to increase the price on the Santo Property. . . . She thereafter timely informed Plaintiff's representative of the need for cancellation."

Sun contends a triable issue of fact exists concerning whether Bernal acted in good faith when she canceled the RPA. In so contending, he asserts there are credibility issues with the April 26, 2022 loan disqualification email from Bernal's mortgage broker, Olivo, which Sun claims Bernal relied on to prove she was later "disqualified" from her preapproved loan. Sun contends the email was potentially "manufactured" to justify Bernal's cancellation of the RPA.

But Sun presents no evidence in support of his argument that the email was "manufactured." His only objection to the email was based on hearsay, which the trial court overruled.

9

Sun's contention that the email was "manufactured" boils down to speculation.  However, a triable issue of fact can only be created by a conflict of evidence, not speculation or conjecture. (*Pipitone v. Williams (*2016) 244 Cal.App.4th 1437, 1453; *Aguilar*, *supra*, 25 Cal.4th at p. 864.)

Further, Sun's "evidence" of Bernal's "bad faith" appears to rest, in part, on a misperception of the facts.  For example, in his statement of facts, Sun states: "Nearly a month after Bernal obtained title to the Triunfo Property, her mortgage broker, Gino Olivo, notified her that she was no longer qualified for her home loan."  The record shows, however, that Bernal's purchase of the Triunfo Property did not close until May 7, 2022, and the loan proceeds were not disbursed until May 13, 2022.  Although the grant deed for the Triunfo Property was signed March 24, 2022, it was not recorded until May 13, 2022—after the close of escrow.

During Olivo's deposition testimony, Sun's counsel asked why Olivo would send the April 26 email informing Bernal that she no longer qualified for the preapproved loan if she had already received the purchase-money mortgage prior to that date. Olivo responded, that "doesn't make sense."  When Sun's counsel later informed Olivo that escrow did not close until May 13, 2022, Olivo clarified his earlier response, stating that it did "make[] sense because that happens all the time.  People don't qualify going through the process all the time."

Nothing about this testimony or the April 26 email raises a triable issue of fact or an inference of  bad faith.

Sun also contends that Bernal's loan qualification was determined by factors other than the Santo Property Price.  For example, he asserts that Bernal's disqualification stemmed primarily from her employment-related debt-to-income ratio, not

interest rates or Sun's refusal to increase his offer. Sun also asserts Bernal's inability to finance the Triunfo Property was caused by her own financial condition, which included the end of her alimony payments on May 30, 2022.

Olivo testified that he did not recall what caused Bernal's debt-to-income ratio to go up. When asked if he recalled it having to do with her employment, he responded, "Yes, could have been." But then he immediately followed up with, "Rates. [¶] [¶] They were moving up at the time."

And although Bernal's alimony payments of $4000 per month were to conclude at the end of May, that does not change the fact that she could not purchase her HOC on the original terms stated in the RPA. Sun's contentions overlook the undisputed evidence that Bernal made six bona fide offers on different replacement homes, but was outbid each time.

*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, upon which Sun relies, is distinguishable. There, the plaintiff asserted an action for specific performance of a real estate purchase agreement. (*Id*. at pp. 887-888.) The defendant successfully sought summary judgment on the ground that the plaintiff did not, and could not, establish that he was ready, willing, and able to perform under the purchase agreement. (*Id*. at p. 888.) The Court of Appeal reversed, concluding that the defendant failed to show that the plaintiff necessarily lacked the requisite evidence, as the record disclosed only that the plaintiff refused to answer questions regarding his financial ability to buy the property based on his counsel's improper objection. (*Id*. at pp. 891-892.) Thus, the defendant's "absence of evidence" theory was insufficient to meet her initial burden of production. (*Id*. at pp. 890-891.)

11

This is not a case in which the moving defendant relied on an "absence of evidence." To the contrary, and as the trial court found, Bernal produced sufficient evidence to show that she properly identified her HOC before she terminated the RPA. She also presented evidence to show that she acted in good faith in attempting to find a replacement home. Sun's insistence that Bernal might have "fabricated an excuse to abandon the deal in bad faith" is speculation that is not supported by the evidence and does not create a triable issue of fact.

*The Trial Court Did Not Improperly Draw Inferences*

Sun contends the trial court improperly resolved credibility disputes and weighed evidence in Bernal's favor, contrary to established summary judgment principles. (Citing *Castaneda*, supra, 229 Cal.App.4th at p. 1019.) Sun contends the trial court improperly (1) "credited Bernal's interpretation of the March 9 text while rejecting Parry's"; (2) "accepted Olivo's April 26 email as conclusive proof of disqualification without addressing his contradictory testimony"; and (3) "adopted Bernal's rising-rates narrative despite evidence that her debt-to-income ratio caused the financing issues." We disagree.

The trial court is required to consider "all inferences reasonably deducible from the evidence." (Code Civ. Proc, § 437c, subd. (c); *Advent, supra*, 6 Cal.App.5th at p. 459.) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).)

Here, the trial court logically and reasonably concluded that "[a] HOC was identified at the time Parry asked when escrow is scheduled to close" on the identified property. The trial court also logically and reasonably concluded that Bernal acted in

12

good faith to timely find a replacement home, and by the time she found one approximately six months later, rates had risen and it was necessary to increase the price of the Santo Property. Sun's contentions to the contrary are based on speculation and boil down to a disagreement with the trial court's evaluation of the evidence.

Based on our independent review of the record, the trial court properly granted summary judgment in favor of Bernal.

*Disposition*

The judgment is affirmed. Bernal shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, Acting P. J.


We concur:



BALTODANO, J.



CODY, J.

Benjamin F. Coats, Judge
Superior Court County of Ventura

_____

Shane, DiGiuseppe & Rodgers and Richard A. Rodgers, Stephen A. DiGiuseppe; Ferguson Case Orr Paterson and Wendy C. Lascher, Norry S. Harn, for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester and Fredric W. Trester, Mark R. Wilson, for Defendant and Respondent.